Ex parte MARVIN WORLEY.

No. A-9036.    Jan. 9, 1937.
(66 Pac. [2d] 107.)

Lynn W. Norman, for petitioner.

Mac Q. Williamson, Atty. Gen., and Sam Lattimore, Asst. Atty. Gen., for the State.

EDWARDS, P. J. This is an original proceeding in habeas corpus. Petitioner alleges he is unlawfully restrained by the warden of the state penitentiary; that said restraint is based on a judgment of the district court of Murray county entered on January 15, 1935; that said court was not in session at that time; that under the provisions of chapter 96, Sess. Laws 1933, House Bill No. 220, district 14, of which Murray county had been a part, was detached and became a part of district 19. That said act became effective January 14, 1935; that prior to said date the regular district judge of district 14 had adjourned the district court of Murray county sine die; that no special term had been called and said judge of district 19 had no jurisdiction.

It appears that by chapter 21, Sess. Laws 1935 (article 2 [20 Okla. St. Ann. §§ 95, 96 and notes]), two regular terms of the district court annually are provided for in each county, the said terms beginning the first Monday of January and July, each year, such terms to continue until the next regular term. The act became effective January 16, 1935, and by its provisions the regular term began on January 16, the date the act became effective. It is stated in the brief that the resident judge of district 14, from which Murray county was detached, adjourned the term on January 12, 1935. This is not alleged in the petition, nor is any transcript of the record shown establishing such fact.

The petition is based entirely on the ground that the Fourteenth Legislature, by chapter 96, Sess. Laws 1933, effective January 14, 1935, had changed and rearranged the judicial districts of the state and in doing so had transferred Murray county from the old Fourteenth district to district 19. It is the contention of the petitioners that by virtue of said transfer of said county there was and could be no term of court in said Murray county until the beginning of the next term as provided in said chapter 96, supra.

The contention that the act transferring Murray county from district 14 to district 19 would operate to terminate the existing term of court in said Murray county and prevent the existence of any term until the next term provided under the new act is not well founded. Under the act applicable to Murray county as part of district 14, terms of court began in May and November. The term of court theretofore opened in said county in November would not end by operation of law until the beginning of the next regular term. The situation created

by the transfer of Murray county to district 19 was specifically passed upon by Oklahoma Supreme Court in Consolidated Flour Mills Co. v. Muegge, 127 Okla. 295, 260 Pac. 745. Grant county had been transferred from the Twelfth judicial district to the Twentieth district, and the same contention was advanced as is now made by petitioners. In syllabus 4 it is held:

"Under our law (section 9, art. 7, of the Constitution), and legislative enactments pursuant thereto, district courts exist as district courts of a particular county, and not as district courts of a particular judicial district; and where by an act of the Legislature a county is detached from one judicial district and attached to another district, and the terms of court are not changed by law, such legislative act does not disturb any lawful term of the court in existence at the time such law becomes effective."

It is true the act provides for terms of court in Murray county to be held in March and September instead of May and November. However, this would not operate to terminate the existing term of court in Murray county until the beginning of the next term as provided for in the new act. It was not the intention of the Legislature to disrupt the courts of the entire state by giving that effect to the new act contended for. There is nothing in the act to indicate such was the legislative intention and the courts will not give the act such effect unless compelled to do so.

An additional question is presented by petitioner in his brief. It is stated that on January 12, 1935, an order was made by district judge of district No. 14, adjourning the November term of court sine die. As stated, this is not set forth in the petition, nor is any great stress made on this point in the brief. While neither the brief nor

the petition contains any evidence of such order, we may assume it to be true. If we are to consider the question thus raised, then the transfer of Murray county from district 14 to district 19, as alleged in the brief, becomes entirely immaterial. The transfer of the county from one district to another does not operate as a matter of law to terminate the existing term of the court, but an order adjourning the court sine die would have such effect. This, however, does not mean that the judgment and sentence pronounced against petitioners is illegal. Section 3831, Okla. Stat. 1931 (20 Okla. St. Ann. § 100), provides:

"Special terms of the district court in any county in a district may be called by the resident judge of said district, by order entered of record in such court, notice of such special term to be given in at least two consecutive issues of a weekly newspaper published and of general circulation in such county, prior to the convening of such special term."

It is a well-established rule that the proceedings of courts are presumed regular. Wilson v. State, 3 Okla. Cr. 714, 109 Pac. 289. So it will be presumed the district court of Murray county was duly in session at a special term held under authority vested in the court by the above section. It will further be presumed that such special term was called and notice given as in said section provided. However, if such order were not entered and notice given, such would not avail petitioners in this proceeding. A failure to give the notice would be an irregularity which might have been taken advantage of on appeal but cannot avail petitioners in habeas corpus. In Penman v. Commonwealth, 141 Ky. 660, 133 S. W. 540, it was held failure to give notice was not error. In Bales v. Commonwealth, 11 S. W. 470, 471, the Kentucky Court of Appeals held:

"There is no reason for reversing this case, and whether the judge signed the order calling the special term is immaterial; the special term was held, and the accused properly tried and condemned."

It is claimed by petitioners that the court was without jurisdiction of the subject-matter. This contention is without merit. The court undoubtedly had jurisdiction of the crime of robbery committed in Murray county. It is admitted the court had jurisdiction of the person and that petitioner was sentenced upon his voluntary plea of guilty. The order and notice contemplated in section 3831, supra, are provided for the purpose of notifying the public and all persons interested of the approaching special term of court. In the absence of such notice defendants could have objected to going to trial and have taken advantage of such irregularity on appeal. This petitioner, however, cannot claim he was in any way prejudiced by such notice or lack of notice. He voluntarily submitted himself to the action of the court.

In Dean v. United States, 33 F. (2d) 68, Circuit Court of Appeals, Eighth Circuit, June 5, 1929, the syllabus is:

"Defendant, pleading guilty during special term held under authority of Judicial Code, § 11 (28 U. S. C. A. § 15), could not take advantage of any irregularities in calling of the term and impaneling of the grand jury by habeas corpus, in that habeas corpus is not a substitute for appeal.

"Special term of District Court, held under authority of Judicial Code, § 11 (28 U. S. C. A. § 15), constituted a de facto term, regardless of irregularity in calling of term and impaneling of grand jury, and all things done at such time were valid and binding as to defendant, pleading guilty to indictment returned at such term."

In the body of the opinion it is said:

"The appellant was indicted by a grand jury called for the special March, 1927, term of the United States District Court for the Northern District of Oklahoma, was sentenced on the 25th day of February, 1928, was committed on the 3d day of March, 1928, to the Washington county jail at Bartlesville, Okla. His claim is that no order or notice for the holding of this special term, at which the indictment was returned, was made or given as required by law, and that the indictment and all proceedings had by virtue of it are absolutely void. * * *

"It is very doubtful whether the showing made by the appellant in connection with his application for the writ overcame the usual presumption of regularity of court proceedings. See Lewis v. United States, 279 U. S. 63, 49 S. Ct. 257, 73 L. Ed. 615. But, arguendo, it may be assumed that the application and the exhibits attached affirmatively show that the irregularities complained of in calling the term occurred.

"The trial court was given no opportunity to pass upon the regularity of the proceedings pursuant to which the special term was held. There was no challenge to the grand jury; no writ of prohibition was sought to prevent the court or the grand jury from functioning at the special term; there was no motion to quash the indictment, no proceedings in abatement, no motion in arrest of judgment; and, from all that appears, the appellant walked into court, entered a plea of guilty to an indictment which upon its face was valid and regular, went to jail, and then for the first time concluded that he was unlawfully in custody, because of the alleged informality in the calling of the special term.

"There are two reasons why the application for the writ was properly denied. The appellant could not take advantage of the irregularities in the calling of the term and the impaneling of the grand jury by habeas corpus. It has been repeatedly held that habeas corpus is not a substitute for appeal."

After quoting from Keizo v. Henry, 211 U. S. 146, 149, 29 S. Ct. 41, 53 L. Ed. 125, the court continued:

"The second reason justifying the denial of the writ is that it sufficiently appears that the special March, 1927, term was a de facto term, if not a de jure one, and that all things done at that term were valid and binding. The proposition that the failure to spread an order calling a special term upon the court records, or to give notice of it in some other way, when in every other respect the special term was held in the usual and customary manner, must result in the release of one who subsequently pleads guilty to or is convicted of a charge contained in an indictment returned at such special term, is opposed to reason and common sense. The appellant expresses some apprehension that his conviction under this indictment may not be a bar to his again being tried for the same offense. There are no grounds for any uneasiness on that score.

"In People ex rel. Childs v. Extraordinary Trial Term of Supreme Court et al., 184 App. Div. 829, 833, 171 N. Y. S. 922, page 925, where the same question as is attempted to be presented here was raised, Judge Page said:

" 'Where a court is held by a judge authorized to hold it, and at a place where the court legally could be held, it is a de facto court, although it was defectively organized so that it was not a de jure court. As with all other de facto bodies or officers, the acts done, the things accomplished, upon the principles of policy and justice, will be held valid and binding. But such a court, body, or officer may by appropriate proceedings be prohibited in advance from exercising the powers that should only be exercised by a court, officers, or body de jure. The writ of prohibition is the appropriate remedy to prevent the acts of a court that may be such de facto, but is not de jure (citing cases). Upon the ground that the court so far held at this Extraordinary Term was a de facto court, I agree with presiding Justice Clarke that the grand jury summoned by it was a de facto grand jury and the indict-

ments found by it are valid, and that none of the formal court proceedings heretofore had can be successfully challenged.' "

To say the least, the term of court was de facto and its proceedings valid but subject to review on appeal.

The writ is denied.

DAVENPORT and DOYLE, JJ., concur.